Argued February 24, affirmed as modified March 2, 1954

BAUM *v.* NEWBRY ET AL. and DEICH ET AL.

267 P. 2d 220

*George T. Cochran,* of La Grande, and *A. S. Grant,* of Baker, argued the cause for appellant. With them on the brief were John F. Steelhammer, of Salem, Anthony Yturri, of Ontario, and John F. Kilkenny, of Pendleton.

*E. G. Foxley,* Deputy Attorney General, of Salem, and *Robert Y. Thornton,* Attorney General, of Salem, argued the cause and filed a brief for respondents.

*John C. Beatty, Jr.,* of Portland, argued the cause for intervenors and respondents Richard Deich and Olga Freeman. With him on the brief were Stanley Darling, of Eugene, Thomas B. Stoel and Nicholas Jaureguy, of Portland.

*Douglas R. Spencer,* of Eugene, argued the cause and filed a brief for intervenor and respondent Walter H. Dodd.

Before LATOURETTE, Chief Justice, and WARNER, ROSSMAN, LUSK, BRAND and PERRY, Justices.

LATOURETTE, C. J.

David C. Baum, a member of the state legislature from Union county, instituted suit for a declaratory judgment against Earl T. Newbry, Secretary of State, and Robert Y. Thornton, Attorney General, to determine the validity of the amendment to article IV, § 6, of the Oregon Constitution, adopted by the people via the initiative in 1952, which deals with the reapportionment of members of the legislative assembly. By reason of such amendment plaintiff's legislative district has been enlarged to include Wallowa county. The trial court permitted Richard Deich, Olga Freeman and Walter H. Dodd to intervene as defendants.

The trial court upheld the validity of the amendment. Plaintiff appeals.

The first point on the appeal is that the constitutional amendment was not legally adopted in that it violated article IV, § 20, of the constitution which prescribes that every act shall embrace but one subject and matters properly connected therewith, which subject shall be expressed in the title, and § 22 of such article which provides that the act revised or section amended shall be published at full length.

■■ The authorities cited in the brief relate to legislative acts rather than to constitutional amendments. The provisions of the constitution above relied on have no reference to constitutional amendments. See *Lechleidner v. Carson,* 156 Or 636, 68 P2d 482; *State v. Payne,* 195 Or 624, 244 P2d 1025.

It is earnestly argued that unless we construe the above constitutional provisions as applicable to amendments to the constitution initiated by the people, voters would have no knowledge of what they are voting on. Section 81-2106, OCLA, relating to the submission of

measures to the voters, provides for short and general ballot titles, the general title to express in not more than 100 words the purpose of the measure. That the purpose of the measure was expressed in the ballot title in the present case is evidenced by the following allegation pleaded in the complaint:

"(a) At the general election held November 4, 1952, the voters of Oregon approved a measure (herein called '1952 Amendment') which appeared on the official ballot at said election under the following heading:

" 'Constitutional Legislative Senator and Representative Apportionment Enforcement Amendment—Purpose: Amends section 6, article IV of the constitution, requiring legislature following each federal census to reapportion legislative representatives among counties of state according to population. The ratios are determined by dividing total population by numbers of senators and representatives, respectively. When fraction exceeding one-half results such county or district shall be entitled to member; otherwise such county is to be attached to adjoining county or counties. Secretary of State to reapportion if legislature fails to enact. Original jurisdiction vested in supreme court to enforce compliance. Amendment reapportions senators and representatives, which becomes operative for primary and general elections of 1954. Vote Yes or No.' "

From the foregoing it is clear that the voters were fully apprised of the nature of the amendment being voted upon.

It is next contended that the amendment violated article XVII, § 1, of the constitution, wherein it is stated:

"* * * When two or more amendments shall be submitted in the manner aforesaid to the voters of this state at the same election, they shall be so

submitted that each amendment shall be voted on separately. * * *''

■■ But the 1952 constitutional amendment did not submit ''two or more amendments'' to the voters. It submitted one amendment which deals only with the subject of reapportionment of the members of the legislative assembly and with matters which are germane thereto. While there may be some question as to whether the above-quoted portion of article XVII, § 1, applies to constitutional amendments submitted by initiative petition, we will assume for the purposes of this case that it does. Section 1 of article XVII does not prohibit the people from adopting an amendment which would affect more than one article or section by implication. Annotation, 94 ALR 1510. At most it prohibits the submission of two amendments on two different subjects in such manner as to make it impossible for the voters to express their will as to each. The fact, if it be one, that the reapportionment amendment may have amended more than one section of the constitution, would be immaterial.

It is next urged that the constitutional amendment is by its terms unconstitutional. Article IV, § 6, of our original constitution, provided for an apportionment by the legislature of the senators and representatives among the several counties according to the white population in each, next following the taking of the census by the federal or state government. It appears that the legislature complied with such constitutional pronouncement periodically up to 1933, from which time on no reapportionment by it has been made. It is for this reason that the people in 1952 amended article IV, § 6, by readopting the same in the main and by adding four provisions setting up machinery for the enforcement of such constitutional provision.

The amendment, by its terms, reapportions among the several counties 30 senators and 60 representatives, being the same number as now prescribed by law, pursuant to article IV, § 2, of our constitution, to become effective at the primary and general elections of 1954, and continuing until the next census enumeration (1960) inclusive. It is provided that senators whose terms do not expire during 1954 shall continue to hold office for the duration of their respective terms, i. e., for an additional two years.

It is next provided that if the legislature does not act in accordance with the constitutional provision for reapportionment at the next session, i. e., 1961, following the next federal census enumeration, then, upon application to the supreme court by a qualified elector of the state, the secretary of state shall step in upon the direction of this court and make the reapportionment as provided by such article IV, § 6, of the constitution, subject to review by this court.

■ The constitutional amendment in the instant case is valid unless it contravenes the Federal Constitution. In *State ex rel. Stadter v. Patterson,* 197 Or 1, 17, 251 P2d 123, we said:

"* * * It must be borne in mind that it is a constitutional provision with which we are dealing. It cannot be held unconstitutional unless in conflict with the federal supreme law."

It is noteworthy that in the argument before us counsel for plaintiff candidly admitted this to be the law, as follows:

"I say this, that until—so long as you follow the procedures that are outlined in the constitution itself, and the people do that, they can do anything, and both sides are in agreement on that."

The following colloquy took place between a member of the court and counsel for plaintiff:

"The Court: If the people are sovereign, can't they pass any kind of a constitutional amendment creating any kind of government if it does not contravene the Federal Constitution of the United States? A. Yes, they can, Your Honor."

Plaintiff asserts that the amendment being reviewed contravenes article IV, § 4, of the Federal Constitution which guarantees to every state a republican form of government in that it delegates to the supreme court and to the secretary of state legislative powers, contrary to article III, § 1, of our constitution relating to separation of powers. So far as the supreme court is concerned, this is not so. Under the amendment, original jurisdiction is vested in the supreme court upon the petition of a qualified elector of the state being filed with the court, where the legislative assembly has enacted a reapportionment measure, to review such measure. If the supreme court determines that the measure complies with the constitution, the petition shall be dismissed; otherwise, it is the duty of the court to declare the measure so enacted null and void, whereupon it is the duty of the court to direct the secretary of state to draft a reapportionment of the senators and representatives in compliance with the constitution. Upon a reapportionment draft being effected by the secretary of state, it then becomes the duty of the court to review the draft, and if such draft is in compliance with the constitution the court shall file the same with the governor, whereupon it shall become a law. On the other hand, if the court shall determine that the draft from the secretary of state does not comply with the constitution, the court shall return the same to the secretary of state accompanied by a

written opinion, particularly specifying wherein the draft does not comply with the constitution. Such opinion shall direct the secretary of state to file a corrected reapportionment with the governor in consonance with the opinion of the court, whereupon such redraft shall become the law upon the filing of the same as aforesaid.

It is further provided that if the legislature fails to make a reapportionment as provided in the constitution, it is the duty of the secretary of state to make a reapportionment of the senators and representatives in accordance with the constitution, and if any qualified elector is aggrieved at such reapportionment he may petition the supreme court, whereupon a similar procedure for review is provided for as is hereinbefore outlined.

It thus appears that the function of the court is one of review, and directive in the nature of mandamus, both within the age-old recognized prerogatives of the judiciary. Notwithstanding the above, the question of the guaranty of a republican form of government is one for congressional action rather than for the courts, as is hereinafter more fully treated.

■ As to the alleged delegation of legislative authority to the secretary of state, it is well settled that it is not within the judicial power to determine whether the republican form of government as guaranteed by the federal constitution is violated because that question is peculiarly a political matter and not one of judicial cognizance.

In *Oregon v. Pacific States Tel. & Tel. Co.*, 223 US 118, 56 L ed 377, 32 S Ct 224, the Supreme Court of the United States said:

"We premise by saying that while the contro-

versy which this record presents is of much importance, it is not novel. It is important, since it calls upon us to decide whether it is the duty of the courts or the province of Congress to determine when a State has ceased to be republican in form and to enforce the guarantee of the Constitution on that subject. It is not novel, as that question has long since been determined by this court conformably to the practise of the Government from the beginning to be political in character, and therefore not cognizable by the judicial power, but solely committed by the Constitution to the judgment of Congress.''

This doctrine is reaffirmed in *Kiernan v. Portland,* 223 US 151, 56 L ed 386, 32 S Ct 231, by the United States Supreme Court. See *Highland Farms Dairy v. Agnew,* 300 US 608, 81 L ed 835, 57 S Ct 549.

■■ We are bound by the interpretation placed on the Federal Constitution by the Supreme Court of the United States. This, therefore, being a political matter and not one for judicial inquiry, we are powerless to determine whether or not the constitutional amendment before us violates article IV, § 4, of the Federal Constitution.

■ The next constitutional question urged is that the amendment violates the Fourteenth Amendment to the Federal Constitution, relating to privileges and immunities, due process, and equal protection under the laws. No authorities are cited to sustain this proposition. The cases contrary to plaintiff's position are legion. See *Snowden v. Hughes,* 321 US 1, 88 L ed 497, 64 S Ct 397; *State of Missouri v. Lewis,* 101 US 22, 25 L ed 989; 12 Am Jur 92, Constitutional Law, § 448, et seq.

It is argued that when Oregon was admitted to the Union there was a covenant between it and the United

States that since article III, § 1, of our constitution separated the executive, judicial and legislative powers, such covenant could not be violated by the state by delegating to the secretary of state, an executive officer, the alleged legislative powers enumerated in the amendment, and that this court, in the proper exercise of its jurisdiction, is obligated to see that such covenant is enforced, irrespective of federal jurisdiction. This argument will not hold water for the reason, among others, that article III, § 1, of our constitution provides as follows:

"The powers of the Government shall be divided into three seperate (sic) departments, the Legislative, the Executive, including the administrative, and the Judicial; and no person charged with official duties under one of these departments, shall exercise any of the functions of another, *except as in this Constitution expressly provided.*" (Italics supplied.)

■ If the alleged covenant has the legal significance attached to it by plaintiff, it is clear that such covenant was not breached by the state in view of that portion of article III, § 1, italicized.

There are a number of other questions raised by plaintiff, all of which we have carefully considered and find that they have no merit.

In voting the reapportionment amendment the sovereign people have spoken. Under the American theory of government, state constitutions derive their vitality from the people themselves, all power being inherent in them, and their voice will not be stilled so long as the amendment is legally adopted and does not contravene the Federal Constitution. Since we have found that the amendment was not within the exceptions above enumerated, the decree of the trial court

will be affirmed excepting as to costs, which were awarded to defendants against plaintiff in the trial court.

■ It appears that plaintiff brought this suit in good faith to determine the legality of a constitutional amendment which not only involves his legislative district but those of the balance of the state. An important public question was presented and we do not feel that he should be penalized by taxing costs against him. For this reason each party will bear his own costs, not only in the trial court but in this court as well.

Affirmed as modified.