Argued and submitted October 25, 1995, appeal dismissed June 21, reconsideration denied September 24, 1996

Victor ATIYEH,
Vera Katz, Berkeley Lent, Ellen Lowe,
Fred Miller, Betty Roberts,
Herbert M. Schwab, Robert Straub,
R.G. Anderson-Wyckoff,
Oregon School Employees Association,
International Association of Fire
Fighters Local 1660, City of Eugene,
and League of Oregon Cities,
*Respondents / Cross-Appellants,*

*v.*

STATE OF OREGON
and Phil Keisling,
Secretary of State,
*Appellants / Cross-Respondents.*

(CC 16-95-00123; CA A89183; SC S42467)

918 P2d 795

Thomas A. Balmer, Deputy Attorney General, Salem, argued the cause for appellants/cross-respondents. With him on the brief were Theodore R. Kulongoski, Attorney General, Virginia L. Linder, Solicitor General, and Rives Kistler, Assistant Attorney General.

William F. Gary, of Harrang Long Gary Rudnick, P.C., Eugene, argued the cause for respondents/cross-appellants. With him on the briefs were Glenn Klein and Yuanxing Chen.

John M. Groen and Robin L. Rivett, Pacific Legal Foundation, Bellevue, Washington, filed a brief on behalf of *amici curiae* Pacific Legal Foundation, Oregon Taxpayers United, and Bill Sizemore.

David B. Frohnmayer, Eugene, and Hans A. Linde, Salem, filed an *amicus curiae* brief *in propria personae.*

## MEMORANDUM OPINION

In the light of the majority's result in *Oregon State Police Officers' Assn. v. State of Oregon*, 323 Or 356, 918 P2d 765 (1996), consideration of the issues in this case is moot. Appeal dismissed.

Fadeley, J., filed a dissenting opinion.

**FADELEY, J.,** dissenting.

I dissent from dismissing these cases as moot. They raise grave constitutional issues about limitations on the *process* for amendment of the state constitution. The other separate cases referred to are about *substantive* limits on law changes that benefit the government at the expense of those with whom it has contracted. I believe that *process* issues must be decided first, and regardless of how the *substantive* limits on governmental impairment of its own obligations may be decided. As this dissenting opinion demonstrates, the several separate amendments proposed by Measure 8 did not comply with constitutional limitations on amending the constitution. Thus, Measure 8 does not validly exist to become the subject of substantive litigation. It is that litigation, not this, that should be mooted if the appeals of any cases are to be dismissed.

Three separate actions have reached this court seeking to invalidate the same 1994 initiative measure, known as "Measure 8." That measure purports to add three[1] separate sections to the state constitution. Plaintiffs in all three actions invoke constitutional protections to assert that the measure is invalid.

In the present case, two former governors, the mayors of Salem and Portland, the statewide associations of cities and of school maintenance employees, local firefighters, the City of Eugene, three former appellate judges, a former head of the Department of Transportation presently employed by a private utility, and the executive of a church-related association seek a declaratory judgment that an initiated measure is invalid because it violates provisions of the Oregon Constitution and the United States Constitution. The state government and its chief elections official are defendants. Plaintiffs urge that the state constitution specifies limited processes by which amendments to the constitution

---

[1] Measure 8 added four sections to Article IX. Sections 10, 11, and 12 are the substantive sections discussed herein. Section 13 is a severability provision that has no separate meaning unless one of the substantive sections is found constitutionally wanting.

may be proposed for approval by the voters and that the present measure, containing several amendments, violates the state constitution.

Ruling as a matter of law, the circuit court for Lane County entered judgment for plaintiffs. The judgment declared that Measure 8 was not a single constitutional amendment but was instead a constitutional revision in part, by reason of being several amendments bundled together for a single vote of approval or rejection. Thus, the court declared that Measure 8 could not be enacted validly through a single initiative petition. That court also ruled, in the alternative, that the subject matter of the measure was not a proper one for treatment as a constitutional amendment. The trial court in effect declared the provisions of Measure 8 invalid.

The state, that is, the government, appeals. It contends that constitutional amendments proposed by the initiative, as these were, are somehow exempt from following the constitutionally specified process for amending the state constitution.

In the second action, the State Police Officers' Association and various individuals obtained circuit court judgments in Multnomah County declaring that provisions in section 10 of the initiated measure violate the federal constitutional prohibition against laws that impair the obligation of contracts. In a companion case, consolidated with the second action, Salem Police Employees obtained a circuit court judgment in Marion County determining that section 12 of the initiated measure also violates that federal constitutional prohibition. Those courts held sections 10 and 12 void and to be nullities. In those cases, the government also appeals.

A third action sought to keep Measure 8 off the ballot. It was dismissed without a ruling on the merits after the measure was voted upon. Plaintiffs appeal.[2]

---

[2] In the third action, the Oregon Education Association and two individuals commenced a case in the circuit court for Marion County against the state's election officials and some sponsors of the preliminary initiative petition. Plaintiffs sought to prevent the measure from appearing on the ballot through the initiative process because of its asserted violations of the state constitution. That court dismissed their complaint but did so only after occurrence of the election at which the voters narrowly approved the initiated measure.

Measure 8, declared invalid by the circuit court, adds three new concepts to Article IX of the Oregon Constitution. That article deals with taxation and government finance. The measure does not add words of amendment to any existing sentence or section of the state constitution. Instead, the measure provides that it changes the constitution

"by creating new sections to be added and made a part of Article IX, such sections to read [etc.]."

Measure 8 contains what the measure itself denominates and numbers as three separate sections. Those new sections added to Article IX of the Oregon Constitution are:

"Section 10. (1) Notwithstanding any existing State or Federal laws, *an employee* of the State of Oregon or any political subdivision of the state who is a member of a retirement system or plan established by law, charter or ordinance, or who will receive a retirement benefit from a system or plan offered by the state or a political subdivision of the state, *must contribute* to the system or plan an amount equal to six percent of their salary or gross wage.

"2. On and after January 1, 1995, the state and political subdivisions of the state shall not thereafter contract or otherwise agree *to make any payment or contribution to a retirement system or plan that would have the effect of relieving an employee, regardless of when that employee was employed,* of the obligation imposed by subsection (1) of this section.

"3. On and after January 1, 1995, the state and political subdivisions of the state *shall not thereafter contract or otherwise agree to increase* any salary, benefit or other compensation payable to an employee *for the purpose of offsetting or compensating an employee for the obligation imposed by subsection (1) of this section.*

"Section 11. (1) Neither the state nor any political subdivision of the state shall *contract to guarantee any rate of interest or return on the funds* in a retirement system or plan established by law, charter or ordinance for the benefit of an employee of the state or a political subdivision of the state.

"Section 12. (1) Notwithstanding any existing Federal or State law, the *retirement benefits* of an employee of

the state or any political subdivision of the state retiring on or after January 1, 1995, *shall not in any way be increased* as a result of or *due to unused sick leave*." (Emphasis added.)[3]

The state constitution specifies and limits the manner or process by which a constitutional amendment may be proposed for approval or disapproval by the people at the polls. Those limits expressly apply to amendments proposed by either the initiative method or legislative referral. Or Const, Art XVII. The state constitution spells out the permissible amendment process applicable to this case. *Ibid.*

When called on to interpret a constitutional provision, this court looks at the text of the provision in context. *Roseburg School Dist. v. City of Roseburg*, 316 Or 374, 851 P2d 595 (1993) ("In interpreting a constitutional provision adopted through the initiative process, our task is to discern the intent of the voters. The best evidence of the voters' intent is the text of the provision itself."); *PGE v. Bureau of Labor and Industries*, 317 Or 606, 612 n 4, 859 P2d 1143 (1993) (the court applies the same structure as it uses for statutory analysis—resort to text, context, and history—to the interpretation of laws and constitutional amendments adopted by initiative or referendum). Our task is to determine the intent of the *voters. Roseburg School Dist.*, 316 Or at 378.

Article XVII, section 1, applies to amendments proposed by initiative petitions. The text makes that clear. For example, a portion of that section reads:

"The votes for and against such amendment, *or amendments, severally, whether proposed* by the legislative assembly *or by initiative petition*, shall be canvassed by the secretary of state in the presence of the governor, and if it shall appear to the governor that the majority of the votes cast at said election on said amendment, *or amendments, severally*, are cast in favor thereof, it shall be his duty forthwith after such canvass, by his proclamation, to declare the said

---

[3] When Measure 8, adding three separate sections to the constitution, was in initiative petition form, it came before this court on a ballot title challenge. This court referred to it then as a "multi-subject measure." *Crumpton v. Keisling*, 317 Or 322, 326, 855 P2d 1107 (1993).

amendment, *or amendments, severally*, * * * [adopted or rejected]."

A second sentence in that section provides:

"When two or more amendments shall be submitted in the manner aforesaid [by initiative or by legislative referral] to the voters of this state at the same election, *they shall be so submitted that each amendment shall be voted on separately*." (Emphasis added.)

That second sentence has been a part of the constitution since statehood. Under Article XVII of the state constitution, proposals to amend the constitution must be submitted to the voters so that each amendment is voted on separately. Each amendment to the constitution must be separately presented to the voters. Several amendments may not be aggregated for one "up or down" vote on all. That process is prohibited by the state constitution and was so prohibited when Measure 8 was proposed and voted upon.

At the time the initiative process was adopted and in its early use, a change in the manner of referring an amendment to the people by the legislature was accomplished so that the power of the legislature to propose amendments and the power to propose amendments by the initiative would remain coequal. Between 1902 and 1906, an inequality was noted. As the president of the Oregon State Bar of that time, George H. Burnett, later to become a justice of this court, reported in his formal remarks to the Bar annual meeting for the year 1905, the ability of the legislative branch to propose amendments to the constitution needed to be made coequal with the people's opportunity to propose amendments through the initiative process, which previously had taken less elapsed time than had the four-year legislative proposal process. George H. Burnett, President's Address, Proceedings of the Oregon State Bar Association for 1905, 17, 24. The 1906 amendment filled that purpose.

The first sentence quoted from Article XVII above was rewritten by an amendment adopted in 1906 so that it expressly made the existing constitutional limitations on the process mandated for a proposed amendment to the state

constitution applicable to an amendment proposed by the initiative. The 1906 amendment, itself proposed by the initiative, added the words "whether proposed by the legislative assembly or by initiative petition." The 1906 amendment also emphasized the requirement that each amendment must be submitted to the voters separately so that each amendment may be voted on individually. It did so by repeatedly adding the adverb "severally" to the first sentence, quoted above, in each of its various clauses. Votes are to be counted on each amendment "severally"; the governor shall review the votes on each amendment "severally" to see if it passed; and, if an amendment received a majority, he shall declare "said amendment or amendments, severally, * * * adopted."

By expressly adding the reference to an initiated amendment to the existing reference to an amendment proposed by the legislature, the amendment of Article XVII adopted by vote in 1906 had the effect of making the amendment process coequal whether an individual amendment was proposed by the initiative or whether it was proposed by the legislature.

The 1906 amendment not only retained the requirement that each amendment be proposed so that it can be voted on separately but also added language to the constitution that strengthened that protection of the amendment process. Because the 1906 amendment was adopted after the 1902 amendment that authorized proposing a constitutional amendment by the initiative process, it logically cannot be argued that the earlier, 1902, amendment removed, for initiated amendments only, the mandate that only individual amendments on which voters must be empowered to vote "separately" may be proposed.[4] The later-adopted 1906

---

[4] In *Kadderly v. Portland*, 44 Or 118, 144, 74 P 710 (1903), *reh den* 75 P 222 (1904), this court upheld the 1902 amendment to Article IV, section 1, that established the right of initiative as a right with constitutional status. The challenge in that case was different. It was that, in 1899, a similar amendment was already pending before the people, because such an amendment had been proposed by vote of the 1893 and 1895 legislatures and that a new amendment could not be proposed while an earlier one was still pending. But the 1895 legislature, although voting to approve a constitutional amendment to establish the initiative, did *not* send it on to the voters for their approval or rejection at an election. Instead, the 1895 legislature apparently tried to kill the initiative process by preventing a vote on it. This court held that the 1895 proposed amendment was *not* still pending, *i.e.*, was "not awaiting action of the legislative assembly" in 1899, *id.*, and, therefore, that the 1899 legislature was free to propose anew a similar amendment.

amendment not only retained the language requiring a separate vote on each amendment but added language reinforcing it.

The state does *not* attempt to make such an argument. Nor does the state argue that the three amendments proposed for approval by a single, aggregating vote were referred to the people under, or otherwise have met the special conditions to qualify under, the separate process for sending a proposed constitutional revision "in part" to the voters. Instead, the state refers historically to remarks made in *debate* in Indiana's constitutional convention of 1850 before that state's adoption of the constitutional requirement for a separate vote on each amendment, a requirement soon thereafter copied into Oregon's original constitution in 1857.

The state does not argue that what was said in debate in Indiana became the law in Oregon when Oregon later borrowed the Indiana constitutional language for use here.[5] Rather, the state refers to the pre-adoption debate in Indiana merely because it contained the only comments on the constitutional requirement that the state has found. The state offers the information but does not claim that it leads to, let alone compels, any particular interpretive conclusion. The state does not contend that the question before this court in the present case is or can be settled authoritatively by any of the contents of the Indiana debate record.

The material cited from the debates concerning provisions of Indiana's second state constitution, that of 1850, indicates that delegates wished a process by which a simple amendment could be proposed to the voters without the necessity of calling a constitutional convention. But the delegates also wished to ensure that the amendment process would neither be easy nor extensive. For example, the requirement that each amendment should be voted on separately was supported "so the people will not have bundles of amendments thrust upon them at once." 2 Debates in Indiana Convention [of] 1850, at 1915. The history of development in Indiana of that provision, and the remainder of the

---

[5] That doctrine applies only when the highest court of the jurisdiction from which a law was borrowed has declared a definitive ruling about the meaning of the provision prior to the time that Oregon borrows the provision.

restrictions on the amendment process developed there and copied into Oregon's constitution, may be found in *Ellingham v. Dye*, 178 Ind 336, 99 NE 1, 10-13 (1912).

The high place that the people of this state and country give to a written constitution is well known. Centuries of hard-won restrictions on government action are there enshrined. By specifying limited processes for amendment, the people protect that high place and their own right from the tyranny of a shifting majority acting as the government. The power to amend is closely guarded, for the sovereignty of the people resides in the constitution. As this court stated in *Kadderly v. Portland*, 44 Or 118, 141-42, 74 P 710 (1903), *reh den* 44 Or 160 (1904):

> "Methods of procedure prescribed by a constitution are ordinarily regarded as mandatory, and, as said by Mr. Cooley, 'the courts tread upon very dangerous ground when they venture to apply the rules which distinguish directory and mandatory statutes to the provisions of the constitution. Constitutions do not usually undertake to prescribe mere rules of proceeding, except when such rules are looked upon as essential to the thing to be done; and they must then be regarded in the light of limitations upon the power to be exercised. It is the province of an instrument of this solemn and permanent character to establish those fundamental maxims and fix those unvarying rules by which all departments of the government must at all times shape their conduct; and, if it descends to prescribing mere rules of order in unessential matters, it is lowering the proper dignity of such an instrument, and usurping the proper province of ordinary legislation. We are not, therefore, to expect to find in a constitution provisions which the people, in adopting it, have not regarded as of high importance, and worthy to be embraced in an instrument which, for a time at least, is to control alike the government and the governed, and to form a standard by which is to be measured the power which can be exercised as well by the delegate as by the sovereign people themselves. If directions are given respecting the times or modes of proceeding in which a power should be exercised, there is at least a strong presumption that the people designed it should be exercised in that time and mode only; and we impute to the people a want of due appreciation of the purpose and proper province of such an instrument, when we infer that such directions are given to any other

end. Especially when, as has been already said, it is but fair to presume that the people, in their constitution, have expressed themselves in careful and measured terms, corresponding with the immense importance of the powers delegated, and with a view to leave as little as possible to implication': Cooley, Const. Lim. (7 ed.) 114."

This court declared in *Boyd v. Olcott et al*, 102 Or 327, 358-59, 202 P 431 (1921):

"The Constitution prescribes the method by which it may be amended, and the procedure so prescribed is the measure of the power to amend. The provisions of the Constitution for its own amendment are mandatory and binding * * *."

In *Holmes v. Appling*, 237 Or 546, 551, 392 P2d 636 (1964), this court emphasized:

"It is well established that when a constitution specifies the manner in which it may be amended or revised, it can be altered by those who favor amendments, revision, or other change only through the use of one of the specified means."

The *Holmes* court struck down an effort to use the initiative to propose a new constitution, even though that effort could qualify as "one subject," a constitution. But, as this court said:

"To call it an amendment is a misnomer." *Id.* at 552.

The sanctity of constitutions and of maintaining the specified processes for amendment of them is widely recognized. *See, e.g., In re Denny*, 156 Ind 104, 59 NE 359, 360 (1901) ("In our system of government a written constitution is the highest expression of law. None other emanates directly from the sovereign people themselves."); *Ellingham*, 99 NE at 15 ("[I]f the views of the greatest writers on questions touching government under written Constitutions are of force, a canon of constitutional construction forbids the implication of the authority, for it is the rule that where the means by which the power granted shall be exercised are specified, no other or different means for the exercise of such power can be implied, even though considered more convenient or effective than the means given in the Constitution; and the Constitution gives special power to the Legislature,

and provides the means of exercising it, to effect needed changes in the organic law."). And the sovereignty of the constitution resides in the willingness of the courts to act effectively to enforce it.[6]

The process of amendment to the constitution is set forth in that document. Article XVII, section 1, states that an amendment, or if more than one amendment has been proposed at the said election, amendments shall have the votes counted as to them "severally."

Article XVII, section 2, a recent addition to our constitution, provides for the method of revising the constitution. Section 1 continues to provide, as it has since statehood, that, when two or more amendments shall be submitted to the voters, they shall be so submitted that each amendment shall be voted on separately. Addition of the revision section did not change the original requirements for individual amendments that may be proposed by an initiative.

Article XVII, section 1, expressly includes the right to amend by vote upon an initiative petition for an amendment. Revision is stated in section 2 to be a different power than that to amend. A revision or revision "in part" may not be proposed in any manner except by a vote of at least two-thirds of all of the members of each house of the legislative assembly favoring submission of the proposed revision or revision "in part" to the people for adoption or rejection.

The history of the initiative process in Oregon indicates that an amendment thereunder is the same as an amendment proposed by the legislature. Article IV, section 1, deals in one phrase of one sentence with both initiated

---

[6] As this court said through Justice Harris in *Boyd v. Olcott et al*, 102 Or 327, 358-59, 202 P 431 (1921):

"The Constitution is an instrument which contains the fundamental or basic law to which all other laws must conform. We do not ordinarily expect to find in a Constitution rules which are merely directory; but, upon the contrary, we are accustomed to find and always expect to find within a Constitution nothing but mandatory provisions. * * *

"* * * So long as the Constitution remains as the fundamental law of the land it and no other law can control unless this becomes a government of men and ceases to be a government of law. We cannot agree with the contention of the defendant that Article XVII is to be treated as merely directory * * *."

amendments to statutory law and amendments to the constitution. Article XVII is more specific in application to the constitutional amendment process only. Article IV does not otherwise describe, restrict, or deal with the constitutional amendment process. In other words, the two "branches" of the legislature, the elected representatives or the people at the polls, have co-equal powers under Article XVII to propose an "amendment or amendments."

Section 2 of Article XVII, containing language first adopted in 1960, makes it clear that the power to revise, even "in part," is separate from, and in addition to, the power to amend through the initiative under Article IV, section 1. No power to revise, even "in part," is placed by the 1960 amendment in the initiative process. A revision of all *or part* of the constitution may not be accomplished by the initiative method. *See Holmes* (applying Article XVII, section 2). Instead, it is intended that the power to *amend* by the initiative is coequal to the legislature's power to *amend*. When a separate, and closely confined process for adopting several constitutional changes with but one vote was proposed in Oregon under the name of "revision" in 1960, the official explanation of the measure in the official Voters' Pamphlet stated that, without the partial or full revision option, the constitution limits the amendment process to "require a separate vote on each proposed change." Explanation of referred measure, Voters' Pamphlet at 16 (for Nov. 8, 1960, general election). Thus, when the people adopted that new, separate, and closely confined process for making multiple amendments by way of a revision in whole or in part by their affirmative vote in 1960, they added that process to Article XVII. They made clear that the initiative process may be used to propose an amendment only and not to revise. Of course, the 1960 vote retained without change the earlier provisions of Article XVII, section 1, referred to above, that require that each amendment shall be so submitted that each is voted on separately. And the 1906 amendment's reinforcing emphasis on voting on each proposed amendment "severally" was also retained unaltered by the 1960 vote to establish a new process for an entire revision "in part."

In *Baum v. Newbry*, 200 Or 576, 581, 267 P2d 220 (1954), this court confirmed the requirement that "each

amendment shall be voted on separately." (Internal quotation marks omitted.) *Accord Ellingham,* 99 NE at 19 ("if it be considered as merely a series of amendments, it is a palpable evasion and disregard of the requirements and checks of article 16, and is for that reason void"). In *Baum,* this court held that an amendment that mandated a legislative reapportionment and provided an enforcement mechanism, stated by adding one section only by amendment to Article IV, was a single amendment that required only one vote to adopt.

I turn to elucidating the tests that are used to distinguish whether the proposal is a single amendment. As *Baum* implies, one test is whether the proposal is stated as a single constitutional section. Measure 8 fails that test. I turn to a second test. Is there a necessary and interdependent relationship among the multiple sections? Unless there is, the proposal is not a single amendment. Each of the three sections of Measure 8, sections 10, 11, and 12, added to the constitution by it could stand *alone* as a "single amendment" of the constitution without the presence of either of the other two sections. None enforces the other or depends on existence of the other for its efficacy. None is explained by the other.

Another expression of the test for determining whether each of the three separately numbered sections is a separate amendment is to reduce their intended effect to a simple declaratory sentence or proposition and see if these stated propositions may exist independently of each other, that is, whether the three are or are not necessary and interdependent as to each other. For example, the declaratory sentence for section 10 would be: Public employees shall pay six percent of their salaries for PERS annuity purchase. The sentence for section 12 would be: No compensation shall be paid on retirement for unused sick leave. Section 11 would be captured by declaring: Government shall not guarantee any rate of return or investment in a public retirement plan. As can be seen, the statements do not overlap. Each section stands alone. Again, Measure 8 fails this expression of the test. Measure 8 is, as it says that it is, three separate amendments to the constitution.

The separateness of the three sections is in contrast to the functions performed by the three *subsections* of section

10. Subsections (2) and (3) of section 10 enforce subsection (1). They have no separate efficacy without the six percent assessment provisions of subsection (1) first being in place.

Put another way, defeat of subsection (1) of section 10 would have made subsections (2) and (3) meaningless or nearly so, but defeat of subsection (1)—or even defeat of section 10 in its entirety—would have no effect on either section 11 or section 12. Likewise defeat of section 11 or of section 12—or even defeat of both of them—would have no effect on the operability of section 10. And, of course, the absence of section 11 would have no effect on section 12, and vice versa. Measure 8 fails the "necessary and interdependent" relationship test.

Unfortunately, no separate vote on each of the three amendments adding new sections to the constitution was provided as to Measure 8. What did occur—a single vote on three amendments—is not permissible for an initiated constitutional amendment under Article XVII, section 1. Nor is an initiative petition a constitutionally permissible way to refer several amendments to a single vote as a revision "in part" under Article XVII, section 2. Moreover, Article XVII, section 1, repeatedly requires that officials count and announce votes for or against each amendment "severally." That language does not refer to a revision in part versus an amendment because, in 1906 when the "severally" requirement was stated, no method of revising the constitution was provided. The only way that that clear mandate can be carried out is if separate votes are cast for each amendment severally. That was not done here. All three separately identified amendments were placed on the ballot in a manner permitting only one vote on all three. That method of amending violates the constitutional mandates limiting that process. It violated the constitutional amendment process provision by preventing application of its mandated protections to Measure 8.

For the foregoing reasons, Measure 8, now printed and published as Article IX, sections 10, 11, 12, and 13, of the constitution, violates the mandatory protections of the Oregon Constitution and is a nullity and void. I would affirm the judgment of the circuit court so declaring for the reasons stated herein.